Mr. Justice FIELD,
dissenting.
I am unable to agree with the majority of the court in the judgment rendered. The power of the mayor and board of New Orleans, appointed by the commanding general upon the military occupation of that city,' terminated with the cessation of hostilities; and I am of opinion that no valid alienation of any portion of the levee front and landing of the city could be made by them for any period extending beyond such occupation.
Assuming, as asserted, that the capture of New Orleans gave to the military authorities of the Union the same rights with respect to property there situated which would attend the conquest of a foreign country, the result is not different. A temporary conquest and occupation of a country do not *402 change- the title to immovable property, or authorize its alienation. They confer only the rights of possession and use.' Whe,n the military occupation eeases, the property reverts to'the original owner with the title unimpaired.
“Of lands and immovable property belonging to the state,” says Halleck, “'the conqueror has by the rights of war acquired the use so long as he holds them. The fruits, rents, and profits are, therefore, his; and he may lawfully claim and receive them, but contracts or agreements, however, which he may make with individuals farming put such property, will continue only so long as he retains control of them, and will cease Qri their restoration to or recovery by their former owner.”* Such is the language of all publicists and-jurists, and there is nothing in the circumstances attending the military occupation of New Orleans by our forces -which calls for any modification of the well-established rule of public law on this subject. The fact that New. Orleans is a part of one of the States of the Union certainly ought not to be deemed a reason for enlarging the power of the military commander, but on the contrary would seem to be good ground for restricting it.
It.appears to me to be perfectly clear that, according to settled doctrines of public law, questioned by no publicists, but everywhere recognized, the authorities of New Orleans wpre restored to as complete control over the levee front and landing of the city upon the cessation of the. military occupation as they possessed previously, and had, in consequence, a perfect right to reniove all obstacles to the public use of such levees and landings.
• I do hot see any ground for the' application of the doctrine-of ratification in the case. The civil authorities of the city were restored to power in March, 1866, and in "April following they asserted their right to .remove the obstructions to the levees created by the steamship company, and took steps to enforce it.'. In this proceeding they repudiated, instead of rktifying the action of their military predecessors. The one *403 hundred and eleven unpaid notes of the ‘company received.,, by their predecessors have been deposited in court subjeét ; to the company’s order, and the failure to restore' or-tender ' the proceeds of one note, athounting to six hundred and sixty'-six dollars, previously paid, may be justified or exi: plained on grounds consistent with the repudiation of,the , lease. Ratification of unauthorized acts of public agents, or persons assuming to be public agents, can o'nly-be, inferred from conduct indicating ail intention to adopt the acts, and inconsistent with any other-purpose. The alienation by sale or lease of any portion of the public levees and landings of the city after the restoration of its civil authorities could only be n>ade, if at all, by ordinance or resolution of. its common council, and it may be doubted whether there could bo a ratification- of an unauthorized alienatioii, attempted by their predecessors, by any proCeeding'less direct and formal.
I am of opinion, therefore, that the decree of the court below should be reversed, and the bill be dismissed.

 On International Law,, chap. 32, § 4.